Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 5, 2004          Decided February 8, 2005

No. 04-5089

EL RIO SANTA CRUZ NEIGHBORHOOD
HEALTH CENTER, INC., ET AL.,
APPELLEES

v.

U. S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND
TOMMY G. THOMPSON, SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01753)

———

*Howard S. Scher*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, *Jeffrey S. Bucholtz*,

Deputy Assistant Attorney General, and *Robert S. Greenspan*, Attorney.

*James L. Feldesman* argued the cause for appellees. With him on the brief were *Khatereh S. Ghiladi* and *Robert A. Graham*.

Before: HENDERSON and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Concurring opinion filed by *Circuit Judge* HENDERSON.

ROGERS, *Circuit Judge*: The Federally Supported Health Centers Assistance Act of 1995 ("FSHCAA"), Pub. L. No. 104-73, 109 Stat. 777 (codified as amended at 42 U.S.C. § 233), makes federally-funded community health centers and their employees, officers, and individual contractors eligible for medical malpractice coverage under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 (2000), to the same extent as federal employees of the United States Public Health Service. *See* 42 U.S.C. § 233(g). The El Rio Santa Cruz Neighborhood Health Center, Inc. ("the Center") in Arizona and physicians before the court provide obstetric and gynecological services for patients of the Center. As a non-profit clinic that receives federal funds, the Center receives professional liability coverage from the federal government pursuant to the FSHCAA. *See id.* When the physicians were sued in the Arizona State court for malpractice, the Center notified the United States Department of Health and Human Services ("HHS") of the suit and submitted information for a determination of the

physicians' coverage under the FTCA. HHS denied the physicians coverage because they had contracted with the Center through their professional corporations. Joined by the Center, the physicians filed a separate lawsuit challenging the denial of coverage under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the district court ruled in their favor.

HHS appeals the grant of summary judgment to the Center and the physicians, challenging both the district court's jurisdiction under the APA and its findings that HHS failed to examine relevant evidence, namely the physicians' separate guarantees to the Center of their personal performance, and to treat similar cases similarly. Upon *de novo* review, we hold that the district court had jurisdiction of the APA claim because the removal remedy under the FSHCAA was not an adequate remedy that precluded APA review, and that HHS was arbitrary and capricious in failing to address evidence before it in concluding that the physicians were ineligible for medical malpractice coverage pursuant to the FSHCAA. Accordingly, we affirm the grant of summary judgment remanding the matter to HHS.

**I.**
**A.**

Under the FTCA, 28 U.S.C. §§ 1346(b), 2672-80, and Public Health Service Act ("PHSA"), 42 U.S.C. § 233 (2000), Congress protected officers and employees of the Public Health Service from personal liability for the negligent or wrongful act or omission while acting within the scope of their employment by providing that the United States may assume any such liability. 28 U.S.C. § 2672. In enacting the FSHCAA, 42 U.S.C. § 233(g), Congress extended FTCA coverage for Public Health Service

employees to public or non-profit private entities receiving federal funds under the PHSA, 42 U.S.C. § 254b, and to their officers, board members, employees, and contractors who are physicians or other licensed or certified health care practitioners, and meet certain criteria. *Id.* § 233(g)(1)(A); *see id.* § 233(e), (h), (i). Upon approval by the HHS Secretary of an application, such individual is "deemed to be an employee of the Public Health Service." *Id.* § 233(g)(1)(F). The Attorney General, upon notice from a deemed defendant, shall defend against, or compromise, civil actions or proceedings for such damage or injury. *Id.* § 233(b), (d). The remedy against the United States, as relevant here, for "damages for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officers or employee of the Public Health Service" is "exclusive." *Id.* § 233(g)(1)(A). Congress enacted the FSHCAA to relieve publicly funded health centers of the burden of rising malpractice insurance costs. H.R. Rep. No. 104-398, at 5-6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 767, 769; H.R. Rep. No. 102-823(II), at 5-6 (1992).

In order to be considered for FTCA coverage, a health center must submit an application to the HHS Secretary verifying that the health center, and the appropriate officer, board member, employee, or contractor of the health center, meet FSHCAA requirements. 42 U.S.C. § 233(g)(1)(D); *see id.* § 233(g)(1)(B)-(C), (h). The Secretary is required to determine within 30 days of receipt of the application whether the applicant is to be deemed covered by the FTCA. *Id.* § 233(g)(1)(E). Once the Secretary has determined that an applicant is covered, this determination is final and binding upon the Secretary, Attorney General, and other parties to a civil action or

proceeding. *Id.* § 233(g)(1)(F). However, the Attorney General, in consultation with the Secretary, and after notice and opportunity for a hearing, may determine, based on five criteria, that covering an individual health care professional "would expose the Government to an unreasonably high degree of risk of loss," and that the individual "shall not be deemed to be an employee of the Public Health Service" for FSHCAA purposes. *Id.* § 233(i).

Once a civil action or proceeding is filed in state or local court against a public health or non profit entity or its officers or employees or contractors, the statute provides for two circumstances in which the case can be removed to the federal district court. First, if the Attorney General appears in state or local court within 15 days after being notified of the filing of the case and advises that the Secretary has deemed the defendant to be a Public Health Service employee, the case shall be removed to the federal district court. *Id.* § 233(*l*)(1); *see id*. § 233(c). Second, if the Attorney General fails timely to appear, the case shall be removed to federal district court upon petition by a defendant. *Id.* § 233(*l*)(2). The case then shall be stayed until the district court conducts a hearing and determines the appropriate forum or procedure for the assertion of the claim. *Id.*

**B.**

The undisputed facts are that in January 2002, the physicians were sued for medical malpractice by Sergio Puig and others ("plaintiffs") in State court in Arizona. The complaint and summonses were served on the physicians on July 17, 2002. By letter of January 23, 2003 ("Gianturco letter"), Elizabeth Jordan Gianturco, Chief of the Claims and Employment Branch, denied El Rio's

request for representation pursuant to the FSHCAA "because [the individual physicians] cannot be deemed employees of the Public Health Service because their contracts were between the health center and a professional corporation," and therefore did "not meet the criteria under the FSHCAA for coverage under the [] FTCA."

On March 21, 2003, the physicians removed the malpractice action to the federal district court in Arizona pursuant to 28 U.S.C. § 1441 and 42 U.S.C. § 233. They filed two pleadings on May 14, 2003 in the Arizona district court. The first was a complaint for declaratory and injunctive relief that they were covered by the FTCA. The second was a petition pursuant to 42 U.S.C. § 233(*l*)(2) for determination of their FTCA coverage. On June 5, 2003, the Arizona federal district court ruled that the physicians' notice of removal was untimely and remanded the case to the State court; the court also ruled that the remand rendered the complaint for declaratory and injunctive relief moot.

On August 18, 2003, the physicians and the Center (hereinafter "the physicians") filed a complaint for declaratory and injunctive relief against HHS and its Secretary under 28 U.S.C. §§ 1331, 1346(a), 1361, and the APA, 5 U.S.C. §§ 701-06 in the district court in the District of Columbia. Ten days later they filed in the Arizona State court a motion to dismiss the malpractice lawsuit for lack of subject matter jurisdiction on the ground that the plaintiffs had admitted the physicians' status as federal employees. The Arizona State court, on October 7, 2003, denied the physicians' motion to dismiss, and, according to the parties' briefs, stayed the malpractice action pending resolution of their APA claim in federal court in the District of Columbia.

On January 15, 2004, the district court in the District of Columbia ruled that it had federal question jurisdiction under 28 U.S.C. § 1331 to entertain the physicians' challenge to HHS's coverage determination, and that no statute barred its review under the APA of the negative coverage decision. On the merits, the district court granted the physicians' motion for summary judgment and remanded for want of reasoned decisionmaking. The court reversed HHS's refusal to deem the physicians as Public Health Service employees, which contradicted HHS's position in a similar case, because HHS had ignored each physician's contractual liability as guarantors.

On appeal, HHS challenges the grant of summary judgment to the physicians on three principal grounds, each of which the physicians dispute. Our review is *de novo. See DBI Architects v. Am. Express Travel-Related Servs. Co.,* 388 F.3d 886 (D.C. Cir. 2004). We first address HHS's contention that the district court lacked jurisdiction under the APA because the removal remedy under the FSHCAA § 233(*l*)(2) is adequate. We then address HHS's contention that the APA action was barred under the *Rooker-Feldman*[1] doctrine. Finally, because we conclude that HHS's first two contentions are unpersuasive, we address the merits of HHS's denial under the FSHCAA of FTCA coverage for the physicians and affirm the grant of summary judgment remanding the matter to HHS.

**II**.

Section 704 of the APA provides that "[a]gency action

---

[1] *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *Gray v. Poole,* 275 F.3d 1113, 1119 (D.C. Cir. 2002).

made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. HHS contends that the district court lacked jurisdiction of the physicians' APA claim because the FSHCAA provides removal as the means of obtaining access to a federal forum to determine the federal status of federally supported health centers and their employees or contractors, and removal is an adequate remedy precluding APA review. HHS maintains that the physicians waived their opportunity to challenge HHS's negative coverage determination because their petition for removal was, in HHS's view, untimely. Against the background of Supreme Court and our caselaw defining the nature of an adequate remedy, we hold that any remedy afforded by the FSHCAA is too doubtful to constitute an adequate remedy precluding APA review.

The Supreme Court has long instructed that the "generous review provisions" of the APA must be given "a hospitable interpretation" such that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (quoting *Shaughnessy v. Pedreiro,* 349 U.S. 48, 51 (1955); *Rusk v. Cort*, 369 U.S. 367, 379-380 (1962)). In *Abbott Laboratories,* the Court allowed pre-enforcement review of agency regulations under the APA, rejecting the argument that statutory provision for review of some matters necessarily implied that Congress intended to deny judicial review of other matters. *Id.* The Court pointed out that its inquiry turned on "whether in the context of the entire legislative scheme the existence of that circumscribed remedy evinces a congressional purpose to bar agency action not within its purview from judicial review." *Id.* Observing that the legislative history evinced

no such intent, *id.* at 142, and that the statute itself provided its remedies were not in lieu of others, *id.* at 144, the Court adopted a literal reading of the statutory language. It rejected an interpretation that the savings clause was limited to review of regulations enumerated in the statute as "requir[ing] a considerable straining both of language and of common understanding." *Id.* at 145.

In *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988), the Supreme Court addressed the meaning of "adequate remedy" under § 704 of the APA. While observing that § 704 was not intended to provide additional judicial remedies "where the Congress has provided special and adequate review procedures," the Court explained that "[t]he exception that was intended to avoid such duplication should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Id.* at 903-04. In that case, the Court concluded that relief in the Claims Court "is plainly not the kind of 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." *Id.* at 904. Not only was reviewability of a disallowance decision by the Claims Court "doubtful," the Claims Court lacked equitable jurisdiction to grant prospective relief, which the Court considered appropriate in light of the interaction between the states' administration of an approved Medicaid plan and the HHS Secretary's regulatory interpretation. *Id.* at 905. The Court was unwilling to assume a money judgment "will always be an adequate substitute for prospective relief . . . ." *Id.*

This court, in turn, in determining whether an adequate remedy exists, has focused on whether a statute provides an independent cause of action or an alternative review

procedure. *See, e.g., Envtl. Def. Fund v. Reilly* ("*EDF*")*,* 909 F.2d 1497, 1501 (D.C. Cir. 1990); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,* 366 F.3d 930, 945 (D.C. Cir. 2004); *Council of & for the Blind v. Regan ("Council"),* 709 F.2d 1521, 1527, 1531-32 & n.75 (D.C. Cir. 1983) (en banc). Succinctly put, where a statute affords an opportunity for *de novo* district-court review, the court has held that APA review was precluded because "Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA." *EDF,* 909 F.2d at 1501; *see Wright v. Dominguez*, 2004 WL 1636961 (D.C. Cir. 2004) (per curiam). In a distinct line of cases, the court also has held APA review is unavailable where there is a private cause of action against a third party otherwise subject to agency regulation. *See Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 945; *Godwin v. Sec'y of Hous. & Urban Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004); *Wash. Legal Found. v. Alexander,* 984 F.2d 483, 485 (D.C. Cir. 1993); *Women's Equity Action League v. Cavazos* ("*WEAL*")*,* 906 F.2d 742, 751 (D.C. Cir. 1990); *Coker v. Sullivan,* 902 F.2d 84, 89-90 (D.C. Cir. 1990); *Council,* 709 F.2d at 1531. While originally deferring to congressional intent to provide a remedy for an acknowledged problem, *Council*, 709 F.2d at 1532 n.75, this court later embraced the doctrinal view disfavoring suits directly against federal enforcement authorities administering anti-discrimination laws, holding that remedies against the discriminating entity were of "the same genre" as that which the court in *Council* had held were adequate so as to preclude APA review, *WEAL*, 906 F.3d at 751 (citing *Council*, 709 F.2d at 1531-33).

A review of the removal remedy under the FSHCAA indicates Congress almost certainly did not intend for the

FSHCAA removal provisions of § 233(*l*)(2) to provide a review procedure for a negative deeming determination by the Secretary. The plain text of the FSHCAA speaks only to the final and binding nature of the Secretary's affirmative coverage determinations, and not to negative coverage determinations. 42 U.S.C. § 233(g)(1)(F). The removal of a state or local court action to the federal district court is mentioned in connection with the Attorney General's appearance to certify that the defendant was acting in the scope of his employment and assumes the Secretary already has made a positive determination as to his status as a Public Health Service employee. *Id*. § 233(c). The statute later provides for the removal of a state or local court action when either the Attorney General timely appears and advises that the Secretary has deemed the defendant to be a Public Health Service employee with respect to the particular action or omission at issue, or the Attorney General does not timely appear and the defendant petitions for removal, and a hearing is held in the federal district court to determine the appropriate forum or procedure for the damages claim. *Id.* § 233(*l*)(1), (2).

When the Attorney General does not timely appear, the legislative history indicates that Congress intended the removal section of the FSHCAA to apply only where the Secretary already has determined that a defendant is covered by the FTCA. The House Report states that the 1995 amendment to the FSHCAA:

> includes a provision requiring that, if a civil action or proceeding is filed in a [s]tate or local court against any *covered* health center or its *covered* personnel, the Attorney General, within 15 days after being notified of such filing, shall make an appearance in such case and advise such

court as to whether the defendant . . . is covered under the FTCA . . . . [I]f the Attorney General fails to appear [timely], upon petition of the *covered* health center or its *covered* personnel, the civil action proceeding shall be removed to the appropriate United States district court, and the civil action or proceeding shall not be acted on until a hearing is conducted . . . .

H.R. Rep. No. 104-398, at 12 (emphasis added). Consistent with Congress's concern with the length of time being taken to process malpractice claims, *id.* at 7, the House Report also noted that under then current law, there was a void such that if the Attorney General's response was not timely, a default judgment could be filed against the covered Center or covered individual. *See id.* at 11-12.

Thus, the FSHCAA text and legislative history show that the removal remedy under § 233(*l*)(2) was not designed to afford independent district court review of the Secretary's negative coverage determinations. The FSHCAA is silent regarding negative coverage determinations. The removal section neither authorizes the federal district court to make the deeming determination itself *de novo*, or to overturn a negative coverage determination. Although the text of § 233(*l*)(2), when the Attorney General does not timely appear, references a post-removal hearing by the district court to determine the proper forum or procedure for the assertion of the claim, the legislative history indicates this was intended to protect a covered defendant against a default judgment due to the Attorney General's untimeliness, rather than a negative coverage determination.

Congress's silence on the question of review of a

negative coverage determination is understandable upon review of the statutory scheme. As the 1995 amendment makes clear, Congress envisioned eliminating front-end delays in malpractice litigation by enacting provisions requiring the Secretary to act promptly on a defendant's application for FTCA coverage, 42 U.S.C. § 233(g)(1)(E), requiring the Attorney General to appear promptly in state or local court, *id.* § 233(*l*)(1), and by affording a covered defendant protection against a default judgment when the Attorney General failed timely to appear, *id.* § 233(*l*)(2). Where the Secretary makes a prompt negative coverage determination in accordance with § 233(g)(1)(E) prior to the filing of a malpractice action in state court, *but see infra* p. 15, the defendant could challenge the denial of coverage as final agency action in a separate action under the APA, 5 U.S.C. § 704. *See Bennett v. Spear*, 520 U.S. 152, 177-78 (1997). Under the scenario that Congress evidently envisioned, a defendant physician in a state court malpractice action would have no occasion to invoke § 233(*l*)(2) when the Attorney General failed to appear, unless the Secretary had deemed the physician covered by the FTCA. The hearing in federal district court following § 233(*l*)(2) removal was designed simply to assure that the United States was substituted as the defendant in place of the Center and/or its personnel and that the case proceeded as a tort action, unless "such a remedy is precluded" because compensation or other benefits were available against the United States under other laws, in which event the case would be dismissed. 42 U.S.C. § 233(c).

In other words, there was no need for Congress to address review of negative coverage decisions. By requiring the Secretary to act within 30 days of receiving an application for coverage, Congress could reasonably contemplate that physicians seeking to associate with

public health care centers would have an incentive to apply promptly to the Secretary and to know, prior to being sued for malpractice, whether or not they were covered by the FTCA. If HHS rendered a negative coverage determination, they could challenge the decision directly under the APA, or purchase private medical malpractice insurance.

The question remains whether the relief potentially available for uncovered defendants under the removal section, § 233(*l*)(2), is of "the same genre," *WEAL,* 906 F.2d at 751, as that available under the APA or other remedies held sufficient to preclude APA review. *Id.* For reasons similar to those stated in *WEAL*, the fact that Congress may not have intended § 233(*l*)(2) to be a remedy for reviewing negative coverage decisions is not dispositive. *See id.* However, Congress's lack of intent to provide a remedy, coupled with the uncertainty of the availability of a remedy in the statute, leads us to conclude that APA review is not precluded.

There is facial attractiveness to treating § 233(*l*)(2) as an adequate remedy for an uncovered FSHCAA defendant. Doing so would mean that all coverage issues under the FSHCAA would be addressed in the same removal procedure, and all questions relating to the proper procedure would be before a single federal judge. The legislative history of the FSHCAA indicates that when Congress added the removal section it was "concerned about the length of time it takes for medical malpractice actions to be processed." H.R. Rep. No. 104-398, at 7. While the focus of that concern was on executive agency processing, *see id.*, and the possibility that default judgments could be rendered against covered health centers and/or their covered personnel, *id.* at 12, requiring

a malpractice defendant to use the removal procedure under § 233(*l*)(2) to seek judicial review of a negative coverage decision would not be inconsistent with reducing delays. Were the district court to make a *de novo* determination of whether the defendant should be deemed a Public Health Service employee, as the Arizona federal district court suggested it would have done, then the physicians would have a federal forum to obtain the relief that they seek in their APA action. *Cf. Wright,* 2004 WL 1636961. It also is conceivable that the district court might stay the malpractice action until the Secretary has made a determination if one had not been made, although this would tend further to delay resolution of the malpractice action. Or the district court might review the negative coverage determination under a standard comparable to the deferential standard of the APA, and then there would be no difference between the removal remedy and the APA remedy.

Nevertheless, there are fundamental problems with this approach. The first relates to the manner in which HHS has implemented the Secretary's deeming responsibilities under § 233(g)(1)(E). Although the statute provides that the Secretary "shall" make a determination of whether an applicant is deemed a member of the Public Health Service covered by the FTCA "within 30 days after the receipt of an application," 42 U.S.C. § 233(g)(1)(E), the Bureau of Primary Health Care ("BPHC") has issued a Policy Information Notice ("PIN") stating that it does not maintain any database of individual providers covered by the FTCA. *See* BPHC PIN 99-08 (April 12, 1999), at §§ XII & XIX. Rather, as the physicians allege in their complaint, and HHS admits in its answer to the complaint, "coverage determinations for individuals are not made in advance but, instead, only after a lawsuit is filed against

such individuals and is reported to HHS." The effect of postponing the coverage decision is that an individual physician providing services to a publicly funded health center cannot be certain of protection from medical malpractice liability - subject to possible review by the Attorney General, 42 U.S.C. § 233(i) - until after being sued. At least where a physician has not insisted on being hired as an employee of a center, the physician must either risk exposure to personal liability, incur or require the health center to incur potentially redundant medical malpractice insurance costs, contrary to the purpose of the FSHCAA, or forego providing services to the health center altogether. If not for HHS's manner of implementing the application provision, it is unlikely that § 233(*l*)(2) would have been available as an option for review of HHS's negative coverage determination because such decisions likely would have been challenged before § 233(*l*)(2) could be invoked.

Second, the removal section is silent on the time frame within which a defendant must petition for removal. Several approaches are possible. HHS's approach would import the 30-day limit of the general removal statute, 28 U.S.C. § 1446(b), triggered after the expiration of the Attorney General's 15-day period to appear. The Arizona federal district court, ruling that until the date of the Gianturco letter, there was no diversity and no federal question and hence no basis for removal, applied the 30-day limit of the general removal statute from the date of the letter. The doctrine of laches, barring removal for unreasonable delay, also might be an appropriate vehicle. *Cf. Nat'l Ass'n for the Advancement of Colored People v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 136-39 (D.C. Cir. 1985). Whichever analysis is correct, the point is that the absence of a time limit in § 233(*l*)(2)

underscores the uncertainty of the availability of the removal remedy. The risk is that, as here, the physicians unknowingly may lose any opportunity to challenge a negative coverage determination.

Under HHS's implementation of the application process under § 233(g)(1)(E), therefore, the text and legislative history of the FSHCAA left the uncovered physicians, upon being sued for malpractice, with a void. As such, § 233(*l*)(2) as a remedy for review of a negative deeming decision is fraught with uncertainty. The FSHCAA does not authorize the district court upon removal to overturn a negative deeming determination or set a deadline for petitioning for removal. HHS itself is unclear on appeal whether the district court is to make a *de novo* coverage determination after a § 233(*l*)(2) removal, arguably contrary to Congress's decision to place that responsibility in the Secretary, or to apply a deferential standard, in which event there would be little reason to bar an APA action seeking the same relief. Therefore, to afford the physicians a remedy for negative deeming determinations in § 233(*l*)(2), HHS's approach would require some recrafting of the removal section. By contrast, by its silence on judicial review, there is no reason to conclude that in enacting the FSHCAA Congress intended to bar APA review of a negative coverage determination.

HHS's reliance on the dictum in *Allen v. Christenberry,* 327 F.3d 1290, 1295-96 (11th Cir. 2003), regarding the limited circumstances for removal under § 233(*l*)(2), is misplaced. In a subsequent decision, *Christenberry v. Thompson* ("*Christenberry II*"), No. 03-14703, at 6 (11th Cir. July 30, 2004) (unpublished), the Eleventh Circuit acknowledged that physicians whom the

Secretary had determined were not Public Health Service employees could challenge the Secretary's negative determination in an APA action, but held that the suit was barred under the *Rooker-Feldman* doctrine in light of the State court's "express finding that the FTCA was not applicable." *Id.* at 9. To the extent HHS relies on our decisions in *National Wrestling Coaches,* 366 F.3d at 930, and *Godwin,* 356 F.3d at 310, standing for the principle that a distinct right of action against the *regulated* third party may be an adequate remedy precluding an APA claim against the *regulating* agency for the same concern, HHS makes no attempt to show that the supposed remedy under § 233(*l*)(2) is adequate under the APA or the standards of adequacy implied by those cases.

For these reasons, we conclude that any remedy afforded by § 233(*l*)(2) is too "doubtful," *Bowen,* 487 U.S. at 901, to constitute an adequate remedy sufficient to preclude the physicians' APA action challenging the Secretary's negative coverage determination. As the physicians maintain, § 233(*l*)(2) "do[es] not and w[as] never intended to apply to an individual's action to compel HHS to accept his/her coverage application." Appellees' Br. at 17. Moreover, APA jurisdiction would not "duplicate" § 233(*l*)(2), because the APA action is for the purpose of reviewing a negative coverage determination, while § 233(*l*)(2) is to protect a covered defendant against a default judgment when the Attorney General fails timely to appear. *See* H.R. Rep. No. 104-398, at 9. Given that § 233 does not provide for judicial review, the reason articulated by the Supreme Court for the adequate remedy doctrine - to avoid duplication of "special statutory procedures for review of agency actions," *Darby v. Cisneros,* 509 U.S. 137, 146 (1993); *see Bowen,* 487 U.S. at 903 - does not arise here. Nor do other reasons that this

court has relied upon to find an adequate remedy apply here, as district court proceedings pursuant to § 233(*l*)(2)'s removal option are not "of the same genre" as a "special statutory procedure for review of agency action" or a private right of action, s*ee WEAL,* 906 F.2d at 751, and the APA action does not put the court in the inappropriate position of overseeing federal agency enforcement, *cf. Coker,* 902 F.2d at 89, but presents a question of statutory interpretation. Much as the Supreme Court concluded in *Abbott Laboratories*, a statute that provides a specific review procedure under certain conditions, namely, when the Attorney General does not appear and the Secretary has deemed the defendant to be covered by the FTCA, but not where the Secretary has made a negative coverage determination, does not offer the requisite "clear and convincing evidence" from which to conclude that Congress intended to bar APA review. 387 U.S. at 141. Where such uncertainty exists regarding the availability and nature of review upon removal on petition by a defendant, APA review is not precluded by § 704. *See id.* at 140-41; *Bowen,* 487 U.S. at 901. To so hold would deny the physicians an APA remedy because the Secretary's negative coverage determination was made other than at the time contemplated by the FSHCAA.

### III.

Under the *Rooker-Feldman* doctrine,[2] a federal district court is precluded from exercising jurisdiction in an APA action where the action "amount[s] to the functional equivalent of an appeal from a state court." *Gray v. Poole,* 275 F.3d 1113, 1119 (D.C. Cir. 2002). HHS contends that the physicians' APA lawsuit is barred because it is the functional equivalent of an appeal from the Arizona State

---

[2] *See supra* n.1.

court, for that court denied the physicians' motion to dismiss for lack of subject matter jurisdiction and directed the physicians to answer the complaint. The premise of HHS's contention is flawed.

The record demonstrates that the Arizona State court did not rule on the specific issue presented by the APA complaint. While the physicians' motion to dismiss the malpractice lawsuit raised the question whether they were covered by the FTCA, the physicians properly characterize their motion to dismiss, and the State court's denial, as relating solely to the question of whether the malpractice plaintiffs' filing of an FTCA claim amounted to an acknowledgment that their lawsuit was more properly against the United States. The court minutes indicate that the State court responded only to the question of whether the plaintiffs had admitted defendants' federal status. The minutes state:

> [The physicians] . . . moved in this Court to dismiss the instant case, claiming [the malpractice] Plaintiffs should be bound by their "admission" in the protective notice of federal claim that [the physicians] are employees of the federal government and the [FTCA] applies . . . .

> [Plaintiffs'] alleged "admission" is not binding on them. Therefore, the Defendant's motion to dismiss is *denied.*

Appellant's Br. Addendum B, 2-4.

In sum, the State court did not address whether HHS erred in refusing to afford the physicians FTCA coverage. The APA and State malpractice proceedings are properly

viewed as two parallel proceedings. This conclusion is consistent with the Eleventh Circuit's decision in *Christenberry II,* in which the court held that the *Rooker-Feldman* doctrine barred APA review, because the State court had expressly found that the FTCA was inapplicable, *Christenberry II,* at 8-9, and a determination by the district court that the physicians were covered by the FTCA would necessarily reverse the State court's denial of the motion to dismiss. *Id.* at 9. Here, because the Arizona State court did not rule on the question whether the physicians are covered by the FTCA, we hold that the *Rooker-Feldman* doctrine does not bar review of the physicians' APA claim to FTCA coverage, and we turn to the merits of HHS's challenge to the district court's conclusion that it acted arbitrarily and capriciously in denying the physicians FTCA coverage.

## IV.

HHS contends that it properly denied FTCA coverage to the physicians. Its argument is that the physicians' contracts with the Center were not as employees but through corporate entities, and whatever effect their personal guarantees had under state law was irrelevant because FTCA coverage is a federal question and administrative convenience outweighed any reason to inquire into the laws of the several states in applying the FSHCAA coverage provision. The physicians respond that "[t]he Gianturco letter rests completely on the assumption that [the] physician[s'] 'contracts were between the health center and a professional corporation,'" ignoring that "there is a separate set of contracts (the Guarantees) for [the] physician[s'] services . . . [and thus] the requirement for a direct contract between health center and individual . . . is fully satisfied." Appellees' Br. at 40.

In order for the court to uphold an agency's action or conclusion as not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), the court must be able to conclude that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962)); *see Lozowski v. Mineta,* 292 F.3d 840, 845 (D.C. Cir. 2002). Appellate counsel's post hoc rationalizations are not a substitute, for "an agency's discretionary order [will] be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines,* 371 U.S. at 168-69.

The FSHCAA defines an employee of a public or non-profit entity receiving federal funds under 42 U.S.C. § 254b, as "any officer, governing board member, or employee of such an entity, and any *contractor of such an entity who is a physician or other licensed or certified health care practitioner.*" *Id.* § 233(g)(1)(A) (emphasis added). This includes "a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology." *Id.* § 233(g)(5). The contracts between the physicians and the Center were titled the "Agreement for Management and Medical Services," and state, for example, that:

> the "Agreement"[] is made effective . . . by and between El Rio Santa Cruz Neighborhood Health Center, Inc., an Arizona non-profit corporation ("El Rio") and [name of physician], M.D., P.C., an

Arizona professional corporation ("Contractor").

The Agreement is signed by the named physician as "President." In addition, the district court found that each Agreement was accompanied by a separately signed guarantee of the individual physician, stating, for example:

The undersigned hereby accepts and agrees to perform and be bound by the terms and conditions of the Agreement for Management of Medical Services made on February 12, 1999 by and between El Rio Santa Cruz Neighborhood Center, Inc., an Arizona non-profit corporation and J. Manuel Arreguin M.D., P.C., an Arizona corporation, and guarantees the performance by the Contractor of the terms and conditions thereof.

The guarantees are signed by each individual practitioner.

HHS denied the physicians medical liability coverage under the FTCA because the physicians contracted with the Center through their individual professional corporations ("eponymous corporations") instead of as individual employees of the Center. The Gianturco letter stated, in relevant part:

[The physicians] cannot be deemed employees of the Public Health Service because their contracts were between the health center and a professional corporation. See BPHC Policy Information Notice 99-08, Section IV. Based upon the above, this agency has determined that this matter does [not] meet the criteria under the FSHCAA for coverage under the . . . FTCA[] and for representation by the United States government.

The PIN cited in the letter stated, in relevant part, that "[a]

contract between a deemed Health Center and a provider's corporation does not confer FTCA coverage on the provider." BPHC PIN 99-08 (April 12, 1999), at § IV.

Thus, as the district court found, there was relevant evidence before HHS that it does not appear to have examined. The record supports the district court's finding that the guarantees, which were signed by the individual practitioner and provided that the undersigned "guarantees the performance by the Contractor of the terms and conditions," functioned as direct contracts between each physician and the Center. As such, the district court concluded they satisfied HHS's interpretation of § 233(g) as requiring a contractual relationship between the individual health care provider and the clinic. The Gianturco letter provided no explanation for ignoring these direct contractual obligations assumed by each physician, for neither the text of the letter nor the referenced PIN addresses the fact that the physicians had a direct contract between the health center and themselves as individuals.

In the district court, HHS argued that because there had been no discovery it did not know whether the eponymous professional corporations were "solely-owned," and that the terms of each physician's contract were different. Also, HHS stated that "[n]either can [HHS] agree that the 'Guarantee' signed by each [p]hysician[] is a 'legally separate' contract," for in HHS's view, "the latter statement of fact [is] ambiguous [and] it is not legally material." HHS has abandoned these arguments on appeal, and instead, discusses the physicians' individual guarantees only to dispute the district court's reliance on state law to find a direct contractual relationship between the physician and health

center. HHS has therefore missed the point of the district court's finding with respect to the guarantee. In denying the coverage to the physicians, HHS never explains why it did not find the individually signed guarantees sufficient to create a direct contract between the Center and the physicians, and its failure to provide a satisfactory explanation renders its decision to deny FTCA coverage based on their contractual relationship with the Center arbitrary and capricious.

Accordingly, we hold that the district court had jurisdiction of the physicians' APA challenge to HHS's denial of FTCA coverage, that the *Rooker-Feldman* doctrine is no bar to that challenge, and that the denial of FTCA coverage was arbitrary and capricious because HHS failed adequately to address relevant evidence before it, and we affirm the grant of summary judgment remanding the matter to HHS.

*So ordered.*

KAREN LeCRAFT HENDERSON, *concurring*:

I write separately because I believe that the United States Department of Health and Human Services (HHS) violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), in two ways rather than one: in denying the physicians medical malpractice liability coverage under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, I believe the HHS acted arbitrarily and capriciously *and* contrary to law. In my view, the HHS erred in concluding that the physicians do not qualify as "contractor[s]" under the Federally Supported Health Centers Assistance Act of 1995 (FSHCAA), 42 U.S.C. § 233(g)(1)(A), merely because they contracted with the El Rio Santa Cruz Neighborhood Health Center through their respective eponymous—and solely-owned—professional corporations, Joint Appendix (J.A.) 19. *See El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, No. 03CV1753, slip op. at 13 (D.D.C. Jan. 15, 2004) (mem.) (finding physicians' "solely-owned eponymous corporations functioned as mere alter egos"), *reprinted in* J.A. 332. The FSHCAA extends FTCA coverage to "any contractor" of a federally-funded community health center "who is a physician."[1] 42 U.S.C. § 233(g)(1)(A). While the contractor must be an "individual" to receive coverage, *id.* § 233(g)(5)(A)-(B); *see Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000) ("[S]trict interpretation requires that a contractor be an 'individual' who contracts with an eligible entity."), nowhere does the FSHCAA elevate contractual form above substance. *Cf.* 42 U.S.C. § 233(g). Of course, statutes that expand government liability—like the FSHCAA—must be construed strictly, *see Dep't of the Army v. Blue Fox, Inc.*, 525

---

[1] To qualify as a contractor, moreover, the "individual" must either "normally perform[] on average at least 32 1/2 hours of service per week for the entity for the period of the contract" or, "in the case of an individual who normally performs an average of less than 32 1/2 hours of services per week for the entity for the period of the contract," must be "a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology." 42 U.S.C. § 233(g)(5)(A)-(B).

U.S. 255, 261 (1999), but, as in Shakespeare's play,[2] a physician who signs his name to a professional services contract followed by "P.C."—manifesting his business name—is no less an individual under the FSHCAA than one who signs his name followed simply by "M.D." *See Alexander v. Mt. Sinai Hosp. Med. Ctr. of Chicago*, 165 F. Supp.2d 768, 772 (N.D. Ill. 2001) (holding physician who performed services at federally-funded health center "under a contract *he himself* signed on behalf of an eponymous professional corporation he founded and of which he is the sole shareholder and employee" qualified as "contractor" under FSHCAA) (emphasis in original); *cf. Dedrick*, 200 F.3d at 747 n.4 (holding physician employed by *entity* that contracted with federally-funded health center did not qualify as "contractor" under FSHCAA, but declining to address "whether an individual doctor who contracts with an eligible entity through his professional corporation would be protected.").

---

[2] WILLIAM SHAKESPEARE, ROMEO AND JULIET, act 2, sc. 2 ("What's in a name? That which we call a rose/ By any other word would smell as sweet.").