# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 2, 2020       Decided August 17, 2021

No. 20-5032

GUNAY MIRIYEVA, ET AL.,
APPELLANTS

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES
AND TRACY RENAUD, ACTING DIRECTOR, U.S. CITIZENSHIP
AND IMMIGRATION SERVICES, IN HER OFFICIAL CAPACITY
ONLY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03351)

*Jennifer M. Wollenberg* argued the cause for appellants.
With her on the briefs was *Douglas W. Baruch*.

*Catherine M. Reno*, Attorney, U.S. Department of Justice,
argued the cause for appellees. On the brief were *Ethan P.
Davis*, Acting Assistant Attorney General, *Colin A. Kisor*,
Deputy Director, *Elianis N. Perez*, Assistant Director, and *C.
Frederick Sheffield*, Senior Litigation Counsel.

Before: SRINIVASAN, *Chief Judge*, ROGERS and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*:  In 8 U.S.C. § 1421(c), Congress set out the path for judicial review of certain claims intertwined with denied naturalization applications.  Miriyeva strayed from that path when she filed suit in the District of Columbia. We therefore affirm the district court's dismissal of Miriyeva's claims for lack of subject matter jurisdiction.

I

When this case began, Gunay Miriyeva and three others were seeking naturalization under 8 U.S.C. § 1440.  Since then, all but Miriyeva became naturalized citizens.  The claims of the three naturalized citizens are moot. *See Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003).  Because Miriyeva has yet to become a naturalized citizen, we proceed with the question in this case under Miriyeva's facts.

Miriyeva is a citizen of Azerbaijan who lawfully entered the United States and, at the time she appeared in the district court, was a resident of San Diego, California.  Hoping to become a naturalized United States citizen, she enlisted in the United States Army in 2016 through the Military Accessions Vital to the National Interest program.  Under this initiative, noncitizens can follow an expedited path to citizenship by serving honorably in the military without having to first gain lawful permanent residence.  Specifically:

> Any person who, while an alien or a noncitizen national of the United States, has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States . . . and who, if separated from such service, *was separated under honorable conditions*, may be naturalized as provided in this section . . . .

8 U.S.C. § 1440(a) (emphasis added).

In 2018, the United States Citizenship and Immigration Services initially approved Miriyeva's application for naturalization under the program. Miriyeva then needed to complete the oath of citizenship to become a naturalized citizen. But before the agency scheduled Miriyeva's oath ceremony, the Army sent her to basic training. And while at training, a medical condition abruptly ended her service.

When a soldier's service ends, the Army assigns one of four separation categories: (1) "honorable," (2) "general (under honorable conditions)," (3) "under other than honorable conditions," or (4) "uncharacterized." *See* Army Reg. 135-178, ch. 2, § III, 2-7. A soldier's separation can be "uncharacterized" if she is at "entry-level" status, meaning she "served less than 180 days of . . . active duty service." Compl. ¶ 6 (cleaned up). The Army described Miriyeva's separation as "uncharacterized" since her service ended while she was still at "entry-level" status.

After her medical discharge, Miriyeva eventually succeeded in getting the agency to schedule her oath ceremony. But then the agency wavered. It ultimately reversed its prior approval of her naturalization application because the military

did not describe her separation as "honorable." The agency determined that her "uncharacterized" separation did not meet § 1440's "separated under honorable conditions" requirement. 8 U.S.C. § 1440(a).

Miriyeva sued in the District Court for the District of Columbia. Among other reasons, she argued that the military refers to "uncharacterized" as "separated under honorable conditions," when required to do so. She says the agency should have likewise recognized her "uncharacterized" separation as honorable and approved her naturalization application. She claims that the Army's policy of treating an uncharacterized separation as not under honorable conditions — which led to the denial of her naturalization application — violated the Administrative Procedure Act, the Constitution's Uniform Rule of Naturalization Clause, and the Fifth Amendment's Due Process Clause. 5 U.S.C. § 706(2); U.S. Const. art. 1, § 8, cl. 4; U.S. Const. amend. V. Miriyeva sought a declaratory judgment and injunctive relief.

The district court dismissed the suit for lack of subject matter jurisdiction pursuant to 8 U.S.C. § 1421(c), which provides that an individual with a denied naturalization application "may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5." *See Miriyeva v. U.S. Citizenship & Immigration Services*, 436 F. Supp. 3d 170, 186 (D.D.C. 2019). The district court determined that § 1421(c) precluded Miriyeva's Administrative Procedure Act and constitutional claims. *Id.* at 178-86. The court also concluded that the Declaratory Judgment Act claim failed without a different, standalone source of jurisdiction. And it rejected the count in which Miriyeva requested injunctive relief, which was not actually a separate claim but merely a

request for a certain remedy purportedly required by other counts. *Id.* at 186 & n.19.

Miriyeva appealed. This court has jurisdiction to review de novo the district court's dismissal of the complaint for lack of subject matter jurisdiction. 28 U.S.C. § 1291; *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018).

II

The Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537, sets out the path for becoming a naturalized citizen. It also provides for judicial review of a denied naturalization application. That provision states in full:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). Here, Miriyeva claims she isn't seeking review of her denied naturalization application. *See* Appellants' Br. 21 (Miriyeva "does not seek review of any . . . naturalization decision or an order of naturalization.").

She says her statutory and constitutional claims therefore fall outside the judicial review provision of the Act.

We disagree. Miriyeva could have brought challenges to the agency's policy in her home district. And § 1421(c) implicitly forecloses parallel district court jurisdiction.

## III

The Supreme Court has provided "a framework for determining when a statutory scheme of administrative and judicial review forecloses parallel district-court jurisdiction." *Jarkesy v. SEC*, 803 F.3d 9, 12 (D.C. Cir. 2015) (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)). "Under *Thunder Basin*'s framework, courts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within the statutory structure." *Id.* at 15 (quoting *Thunder Basin*, 510 U.S. at 207, 212) (cleaned up).

## A

We begin by asking if it's "fairly discernible" that Congress intended to preclude judicial review outside a special statutory review scheme. *Id.* (quoting *Thunder Basin*, 510 U.S. at 207). Here, the answer is yes.

In *Elgin v. Department of Treasury*, the Supreme Court concluded that the Civil Service Reform Act laid out in "painstaking detail . . . the method for covered employees to obtain [judicial] review of adverse employment actions." 567 U.S. 1, 11-12 (2012). The Court reasoned that, through five sections of the statute, Congress explained the scope of the

Act's application, made clear the procedures an employee should enjoy before agency action, and outlined the review system. *Id.* at 11.

Likewise, in *Jarkesy v. SEC*, this court concluded that "[t]he securities laws contain a[] . . . comprehensive structure for the adjudication of securities violations." 803 F.3d at 16. That scheme dictates an agency review process starting with a decision by an administrative law judge, allowing an appeal of the administrative law judge's decision, and lastly, allowing for judicial review in a court of appeals. *Id.*

Here, the statutory review scheme is similarly "elaborate." *Elgin*, 567 U.S. at 11 (cleaned up). Codified §§ 1421, 1446, and 1447 of the Immigration and Nationality Act "exhaustively detail[]" the review process for a naturalization application. *Id.* After an individual submits a naturalization application under § 1445, an agency employee will investigate the applicant and determine whether to grant or deny the application. 8 U.S.C. § 1446. If the agency denies the application, "the applicant may request a hearing before an immigration officer." *Id.* § 1447(a). And if the immigration officer also denies the application, the applicant can seek review of the denial in the district court in which the applicant resides. *Id.* § 1421(c).

Because Congress intended these sections to collectively (and exclusively) direct the review process of naturalization application denials, it is no coincidence they repeatedly cross reference each other:

- Section 1446(b) refers to § 1447(a): "The record of the examination authorized by this subsection shall be admissible as evidence in any hearing conducted by an immigration officer under section 1447(a) of this title.

Any such employee shall, at the examination, inform the applicant of the remedies available to the applicant under section 1447 of this title."

- Section 1447(a) points back to § 1446: "If, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."

- Section 1447(b) also points back to § 1446: "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter."

- Section 1447(d) refers to § 1446(b): "Such subpenas may be enforced in the same manner as subpenas under section 1446(b) of this title may be enforced."

- Finally, § 1421(c) refers to § 1447(a): "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial . . . ."

Thus, the sections are intertwined and, as in *Elgin*, "elaborate[ly]" explain the procedure for an applicant to follow. 567 U.S. at 11 (cleaned up). Both the text and structure make clear that Congress intended this multistep review scheme to be the *only* path to judicial review for certain types of claims.

9

B

Next, are Miriyeva's claims of the type Congress intended to be reviewed within the statutory scheme?  *See Thunder Basin*, 510 U.S. at 212.   Again, yes.

When determining whether a plaintiff's "claims are of the type Congress intended to be reviewed within this statutory structure," the Supreme Court has provided three factors to consider:  (i) whether a finding that jurisdiction is precluded would "foreclose all meaningful judicial review," (ii) whether the suit is "wholly collateral to a statute's review provisions," and  (iii) whether the claims are "outside the agency's expertise."  *Id.* at 212-13 (cleaned up).

1

First, finding that the District Court for the District of Columbia does not have jurisdiction over Miriyeva's claims does not "foreclose all meaningful judicial review."  *Id.* Miriyeva can file claims challenging the agency's policy in her home district.   If her claims are meritorious, she will "eventually obtain review and relief" there.  *American Federation of Government Employees, AFL-CIO v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019).

What's more, by specifying de novo review and the ability for the district court to "make its own findings of fact and conclusions of law," the relevant district court is not limited to the administrative record upon review.  8 U.S.C. § 1421(c). Thus, an inadequate administrative record will not hamper the district court's ability to review Miriyeva's challenges.

The parties debate whether this result will lead to piecemeal litigation and frustrate the ability of classes or

organized plaintiffs to bring similar suits. Perhaps it will. But what matters is that Miriyeva's claims can be reviewed, and she can obtain relief from the alleged unlawful policy as it relates to her. She can seek such relief in the district court in which she resides. *See American Federation of Government Employees*, 929 F.3d at 756-57 (unpersuaded by a lack of nationwide relief and concluding that there existed meaningful "review and relief"). Bringing challenges through § 1421(c) does not "foreclose all meaningful judicial review," even if it does foreclose the review that Miriyeva wants. *Thunder Basin*, 510 U.S. at 212-13.[1] "It is the comprehensiveness of

---

[1] The parties argue over whether § 1421(c) provides an adequate alternative remedy to Administrative Procedure Act review. *See* 5 U.S.C. § 704 ("final agency action for which there is no other adequate remedy in a court [is] subject to judicial review"). But that is not a jurisdictional question. *See Trudeau v. FTC*, 456 F.3d 178, 183-84 (D.C. Cir. 2006) ("The APA . . . is not a jurisdiction-conferring statute."); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620-21 (D.C. Cir. 2017) (The "adequate remedy bar of § 704 determine[s] whether there is a cause of action under the APA, not whether there is federal subject matter jurisdiction."). And even if the issue of an adequate alternative remedy could inform the jurisdictional inquiry into meaningful judicial review, there is an adequate alternative remedy here.

At least with regard to Miriyeva specifically, she will enjoy in her home district APA-like review and relief. Section 1421(c) specifies that the court's review is "in accordance with chapter 7 of title 5." 8 U.S.C. § 1421(c). Chapter 7 of title 5 — a codified portion of the Administrative Procedure Act — allows courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, [or] an abuse of discretion," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction," "without observance of procedure required by law," or "unwarranted by the

the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention." *American Federation of Government Employees*, 929 F.3d at 757 (cleaned up).

2

Second, Miriyeva's suit is not "wholly collateral" to the review provisions regarding the denial of her naturalization application. *Thunder Basin*, 510 U.S. at 212 (cleaned up).

A claim is not wholly collateral to the claims meant to go through the review scheme if that claim is "at bottom" an attempt to accomplish what's contemplated by the review scheme. *Heckler v. Ringer*, 466 U.S. 602, 614 (1984). Even if that claim challenges the "procedure" the agency used to reach its decision (here, whether an uncharacterized discharge precludes naturalization) that claim is not wholly collateral

---

facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2)(A)-(D), (F).

What's more, in determining "whether an alternative remedy is adequate and therefore preclusive of APA review," we may consider whether the "alternative . . . provides for *de novo* district-court review of the challenged agency action." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235, 1244-45 (D.C. Cir. 2017) (cleaned up). Here, it does. That is "further evidence of Congress' will" to provide an "alternative remedy and thereby bar APA review," "given the frequent incompatibility between *de novo* review and the APA's deferential standards." *Id.* (cleaned up). "Congress did not intend to permit a litigant challenging an administrative denial to utilize simultaneously both the [de novo] review provision and the APA." *Id.* at 1245 (quoting *El Rio Santa Cruz Neighborhood Health Center, Inc. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)) (cleaned up).

when it is "inextricably intertwined" with the claim referenced in the review scheme (here, the denial of a naturalization application). *Id.*

That is one of the principles of *Heckler v. Ringer*. There, the Department of Health and Human Services had a policy of not paying for a particular surgery under Medicare. *Id.* at 607. Several patients wanted the Department to cover the cost of that surgery. *Id.* at 609-10. They sought money for the surgeries and "the invalidation of the . . . current policy and a 'substantive' declaration . . . that" the Department pay for their surgeries. *Id.* at 614. The Supreme Court determined that the patients' procedural claims were not collateral to their claims seeking payment for their surgeries. *Id.* Instead, they were "inextricably intertwined." *Id.* So all aspects of the patients' claims belonged where "Congress has provided for the determination of claims for benefits." *Id.*

*Jarkesy* faithfully applied *Heckler*'s principle that, at times, challenges to agency procedures that lead to an agency's decision are not collateral to challenges of that decision. 803 F.3d at 23. In *Jarkesy*, the SEC made several decisions adverse to Jarkesy, an investment advisor, including a decision to bring an administrative enforcement proceeding against him. *Id.* at 13. Before that proceeding concluded, Jarkesy sued the SEC in a separate action. *Id.* He challenged the agency's procedures and sought to terminate the administrative proceeding against him. *Id.* at 13-14.

This court held that Jarkesy's challenges to the SEC's procedures "were not collateral to" the SEC's decisions. *Id.* at 23 (cleaned up). Instead, his challenges were "an attempt to reverse the agency's decisions" outside the system Congress created for adjudicating those decisions. *Id.*

So too here. Recall that under § 1421(c), an applicant may seek judicial review of the denial of her naturalization application. If the plaintiff is seeking to have her denied application overturned, a claim regarding the process and policies that dictated that denial is not "wholly collateral" to "such denial." *Heckler*, 466 U.S. at 618 (cleaned up); 8 U.S.C. § 1421(c). That is this case. Miriyeva ultimately seeks to overturn the denial of her naturalization application by challenging an agency policy about the classification of "uncharacterized" separation statuses. *See* Compl. ¶ 146 (asking the court to stop the agency from "maintaining the denial of any naturalization application, *including each Plaintiff's application*, on the grounds" of the "uncharacterized" discharge) (emphasis added); *id.* (asking that the agency "be enjoined from denying naturalization applications . . . on [those] grounds"). Since she is "at bottom" trying to reverse her denied application, her claims are not wholly collateral. *Heckler*, 466 U.S. at 614.[2]

---

[2] That distinguishes this case from *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), which we discuss more below. If the *McNary* plaintiffs succeeded in challenging the procedures at issue, those plaintiffs *still* might not have received special agricultural worker status. *Id.* at 495. But Miriyeva says that the agency's interpretation of her "uncharacterized" discharge status was the only reason she wasn't naturalized.

Also, we note that Miriyeva has repeatedly insisted she is not challenging her denial but rather the agency's policy. She also emphasizes that she is not seeking an order for naturalization but rather an injunctive order against the agency's policy. But because the policy was the basis given for her denial, these are distinctions without a difference.

14

3

The third factor also weighs against the district court's jurisdiction. That factor asks whether the disputed claims are "outside the [agency's] area of expertise." *Jarkesy*, 803 F.3d at 28. In *Jarkesy*, that depended on whether an agency is better equipped than a court to first adjudicate a claim. *Id.* at 28-29. But here, Miriyeva does not rely on this factor. She does not — and could not plausibly — argue that the District Court for the District of Columbia has more expertise than the district court where she lives.

\* \* \*

To sum up, if Miriyeva had sued in her home district, she would have received (1) meaningful judicial review (2) on her non-collateral claims (3) before a district court with as much expertise as any other district court. These three factors are not "three distinct inputs into a strict mathematical formula," but "general guideposts." *Id.* at 17. As applied here, they suggest that Miriyeva's "claims are of the type Congress intended to be reviewed within th[e] statutory structure" of §§ 1421, 1446, and 1447. *Thunder Basin*, 510 U.S. at 212.

C

Miriyeva's other arguments do not change our conclusion that the statutory review scheme, as set out in §§ 1421, 1446, and 1447, forecloses the District Court for the District of Columbia's subject matter jurisdiction over her claims. In particular, Miriyeva's reliance on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), is misplaced.

*McNary* considered whether a provision of the Immigration and Nationality Act — 8 U.S.C. § 1160(e) —

"precludes a federal district court from exercising general federal-question jurisdiction over" the plaintiffs' constitutional and statutory claims. *Id.* at 483. McNary alleged the Immigration and Naturalization Service administered a legalization program for "special agricultural workers" through "unlawful practices and policies." *Id.* at 483, 487 (cleaned up).

In *McNary*, the provision regarding review of denials of applications for special agricultural worker status provided: "There shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation . . . ." 8 U.S.C. § 1160(e)(3)(A). And *McNary* noted that, according to the statute, "the courts of appeals constitute the only fora for judicial review of deportation orders." 498 U.S. at 486. Section 1160(e) further provided:

> Such judicial review shall be based *solely upon the administrative record* established at the time of the review by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish *abuse of discretion* or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.

8 U.S.C. § 1160(e)(3)(B) (emphases added).

*McNary* held that the provision regarding review did not prevent the district courts from retaining their usual federal question jurisdiction over claims alleging constitutional patterns and practices. 498 U.S. at 494. The Court reasoned that the limitations from that section only refer to review of

denials of applications, not any "general collateral challenges," like unconstitutional pattern and practice claims. *Id.* at 492.

To be fair to Miriyeva, § 1421(c) likewise does not mention policy claims. But Miriyeva's case is distinguishable from *McNary* for four reasons.

*First*, the Court in *McNary* said that the provision regarding review applies only to claims that were "subjected to administrative consideration and that have resulted in the creation of an adequate administrative record." *Id.* at 493. For special agricultural worker applicants like the plaintiffs in *McNary*, it was impossible to develop constitutional challenges in the administrative records of their applications. *Id.*[3] So the Court allowed federal courts to consider those constitutional challenges, even in the absence of an order of exclusion or deportation.

No such problems are present in this case. The statute requires the district court where the plaintiff resides to "make its own findings of fact and conclusions of law" and, "at the request of the petitioner," to "conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). Unlike in *McNary*, the court is thus not handcuffed to the administrative record at all or otherwise constrained by the agency's resolution. *See id.*; *McNary*, 498 U.S. at 496-97.

*Second*, the review provision in *McNary* specified an abuse of discretion standard, which "would make no sense" for constitutional and statutory questions. 498 U.S. at 493. Courts typically consider those questions de novo. The

---

[3] When we refer to the *McNary* plaintiffs, we mean specifically the individual plaintiffs whose applications were denied — not the organizational plaintiffs. *See* 498 U.S. at 487.

specified standard of review thus afforded "substantial credence to the conclusion" that the limited judicial review provision did "not apply to challenges to [Immigration and Naturalization Service's] practices and procedures." *Id.* at 493-94.

In contrast, the statute here specifically prescribes the type of review common for constitutional and statutory claims — de novo review. *See* 8 U.S.C. § 1421(c). The standard thus "lends substantial credence to the conclusion" that the review scheme applies to Miriyeva's challenges. *McNary*, 498 U.S. at 493.

Even more telling is § 1421(c)'s reference to the relevant Administrative Procedure Act sections. It says the court shall review the denial of naturalization "in accordance with chapter 7 of title 5." 8 U.S.C. § 1421(c).[4] By broadly referring to these sections, Congress included APA-type review within the district court's review of the denial of Miriyeva's naturalization application. *See* 5 U.S.C. §§ 701-706.

*Third*, *McNary* emphasized that the plaintiffs' claims were collateral to review of a denied application, thus freeing the plaintiffs from the directives of the review provision. *McNary*, 498 U.S. at 494-99. If the plaintiffs like those in *McNary* prevailed on their procedural objections, that victory would not have reversed the denial of their applications for special agricultural worker status. *Id.* at 495. Rather, it

---

[4] Again, part of chapter 7 of title 5 allows courts to "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, [or] an abuse of discretion," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction," "without observance of procedure required by law," or "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2)(A)-(D), (F).

would allow only for their applications to be reconsidered with new procedures in place — such as allowing applicants to challenge adverse evidence or allowing applicants to call witnesses on their behalf. *Id.* at 487-88, 495. It's possible the Immigration and Naturalization Service still would have denied their applications despite the new procedures.

But here, Miriyeva says that the agency's treatment of her "uncharacterized" separation status is the only reason the agency denied her application. Compl. ¶ 45. So Miriyeva is in effect seeking a reversal of her naturalization denial. If she prevails, and the court gives her the requested relief, the agency will be enjoined from "maintaining the denial" of her naturalization application on that ground. *Id.* ¶ 146. A favorable ruling for her on the merits removes the only reason for her denial.

*Fourth*, because judicial review was possible only when deportation proceedings were occurring, applicants seeking special agricultural worker status would have to turn themselves in for deportation if they wanted a court to consider their policy and practice claim. *McNary*, 498 U.S. at 496-97. That "bet the farm" scheme would have forced them to risk "their ability to reside in the United States" — all for a chance at judicial review. *Jarkesy*, 803 F.3d at 21. "[T]hat price [was] tantamount to a complete denial of judicial review for" the plaintiffs. *McNary*, 498 U.S. at 496-97.

Compare that to other cases, like *Jarkesy*, where the court said Jarkesy had to raise his claims within the exclusive review scheme at issue. 803 F.3d at 15-16, 29. There, deportation was not a risk, and no one needed to "bet the farm." *Id.* at 21. This informed the court's conclusion that Jarkesy had access to meaningful judicial review. *Id.* at 20-22.

Miriyeva's case is much more like *Jarkesy* than *McNary*. She need not "bet the farm" by filing suit pursuant to § 1421(c). She faces no risk from filing that is comparable to deportation. Through § 1421(c), she can obtain meaningful judicial review.[5]

\* \* \*

Congress channeled claims like Miriyeva's into an exclusive statutory scheme established by § 1421(c). The district court lacked subject matter jurisdiction over Miriyeva's claims that the agency's policy violates the Constitution and the Administrative Procedure Act.

IV

That leaves us with Miriyeva's final two counts in which she requests injunctive relief and a declaratory judgment.

As the district court properly noted, the count in which Miriyeva requests injunctive relief is not actually a count or a separate claim — it is simply a request for a certain remedy. *See Miriyeva v. U.S. Citizenship & Immigration Services*, 436 F. Supp. 3d 170, 186 n.19 (D.D.C. 2019). So the district court properly rejected that count.

And as for Miriyeva's Declaratory Judgment Act claim, it is a "well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction." *C&E*

---

[5] In *General Electric Co. v. Jackson*, this court implied that the "collateral" and "meaningful judicial review" analyses in *McNary* were provided by the Supreme Court as ways of distinguishing *Heckler*, not as reasons for determining jurisdiction. 610 F.3d 110, 125-27 (D.C. Cir. 2010). But even if we limit ourselves to the first and second factors, they alone are sufficient to distinguish Miriyeva's case from *McNary*.

*Services, Inc. of Washington v. D.C. Water & Sewer Authority*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)) (cleaned up). Since the district court otherwise lacked jurisdiction over Miriyeva's claims, it did not have subject matter jurisdiction to entertain her Declaratory Judgment Act claim either.

\* \* \*

We affirm the district court's dismissal for lack of subject matter jurisdiction.