# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 5, 2016       Decided January 31, 2017

No. 16-5110

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01291)

*Alan B. Morrison* argued the cause for appellant. With him on the briefs was *Adam J. Rappaport*.

*Scott L. Nelson* and *Rachel M. Clattenburg* were on the brief for *amicus curiae* Public Citizen, Inc. in support of appellant.

*Daniel Tenny*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Michael S. Raab*, Attorney.

Before: TATEL and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Section 704 of the Administrative Procedure Act limits judicial review under that statute to agency actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Appellant filed suit under the APA to compel the Department of Justice's Office of Legal Counsel to meet its disclosure obligations under the "reading-room" provision of the Freedom of Information Act. 5 U.S.C. § 552(a)(2). The district court dismissed the case, concluding that appellant has an adequate remedy under FOIA. For the reasons set forth below, we agree and affirm.

## I.

"For decades, [the Office of Legal Counsel (OLC)] has been the most significant centralized source of legal advice within the Executive Branch." Trevor W. Morrison, *Stare Decisis in the Office of Legal Counsel*, 110 Colum. L. Rev. 1448, 1451 (2010). Indeed, executive-branch officials seek OLC's opinion on some of the weightiest matters in our public life: from the president's authority to direct the use of military force without congressional approval, to the standards governing military interrogation of "alien unlawful combatants," to the president's power to institute a blockade of Cuba. Office of Legal Counsel, *Authority to Use Military Force in Libya* (Apr. 1, 2011); Office of Legal Counsel, *Military Interrogation of Alien Unlawful Combatants Held Outside the United States* (Mar. 14, 2003); Office of Legal Counsel, *Authority of the President to Blockade Cuba* (Jan. 25, 1961).

OLC's authority to render advice is, in some sense, nearly as old as the Republic itself. In the Judiciary Act of 1789, Congress authorized the Attorney General "to give his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments." Act of Sept. 24, 1789, ch. 20, § 35, 1 Stat. 73, 93; *see* 28 U.S.C. §§ 511-513 (codified as amended). The Attorney General has, in turn, delegated to OLC authority to "[p]repar[e] the formal opinions of the Attorney General; render[] informal opinions and legal advice to the various agencies of the Government; and assist[] the Attorney General in the performance of his functions as legal adviser to the President." 28 C.F.R. § 0.25; *see* Luther A. Huston, *The Department of Justice* 61 (1967) (recounting the formation of OLC).

OLC has a "longstanding internal process in place for regular consideration" of whether to share "significant opinions" with the public. Memorandum from David J. Barron, Acting Assistant Attorney General, to Attorneys of the Office, Best Practices for OLC Legal Advice and Written Opinions 5 (July 16, 2010). Attorneys who have worked on or reviewed an opinion give initial recommendations about whether publication is appropriate that are "forwarded to an internal publication review committee." *Id.* "If the committee makes a preliminary judgment that the opinion should be published, the opinion is circulated to the requesting Executive Branch official or agency and any other agencies that have interests that might be affected by publication, to solicit their views" before the committee renders a "final judgment." *Id.* In making this determination, OLC "operates from the presumption that it should make its significant opinions fully and promptly available." *Id.* An opinion is deemed significant if, for example, it possesses "potential

importance . . . to other agencies or officials in the Executive Branch"; there is a "likelihood that similar questions may arise in the future"; it is of "historical importance"; or it has potential significance to OLC's "overall jurisprudence." *Id.* Other factors militate against disclosure, such as when publication would "reveal classified or other sensitive information relating to national security"; "interfere with federal law enforcement efforts"; undermine "internal Executive Branch deliberative processes" or "the confidentiality of information covered by the attorney-client relationship between OLC and other executive offices"; or result in the disclosure of documents "that are of little interest to the public." *Id.* at 5–6.

Unsatisfied that these procedures provide the public with the access the Freedom of Information Act demands, appellant Citizens for Responsibility and Ethics in Washington (CREW) initiated this litigation. CREW is a non-profit corporation whose organizational mission is "to protect[] the rights of citizens to be informed about the activities of government officials." By its own account, CREW is no stranger to using FOIA to obtain and disseminate information "about government officials and their actions," including OLC. For instance, before commencing this action it filed a separate FOIA request—not at issue here—"for all [OLC] opinions discussing the authority of the president as well as any executive branch agency or agency component to conduct domestic and foreign surveillance."

Before filing suit, CREW sent a letter to OLC requesting that it comply with its obligations under FOIA section 552(a)(2)—the so-called "reading-room" provision—which requires agencies to "make available for public inspection in an electronic format" certain records, including "final opinions . . . made in the adjudication of cases" and "those

statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." Letter to Assistant Attorney General Virginia A. Seitz from Anne L. Weismann (July 3, 2013); 5 U.S.C. § 552(a)(2). CREW argued that OLC opinions are subject to disclosure under the reading-room provision because they "function as binding law on the executive branch." Letter to Assistant Attorney General Seitz.

In response, OLC explained that, in its view, FOIA exempts OLC opinions from disclosure because they are "ordinarily covered by [FOIA's] attorney-client and deliberative process privileges" and, "as confidential and pre-decisional legal advice, . . . constitute neither 'final opinions . . . made in the adjudication of cases' nor 'statements of policy and interpretations which have been adopted by the agency.'" Letter to Anne L. Weismann from Deputy Assistant Attorney General John E. Bies (Aug. 20, 2013). "Nevertheless," OLC stated, it "make[s] an individualized, case-by-case determination with respect to whether each opinion . . . is appropriate for publication" and, in response to FOIA requests seeking specific records, "consider[s] whether to waive applicable privileges and release the opinion as a matter of administrative discretion." *Id.*

Shortly after receiving OLC's response, CREW commenced this action against DOJ and certain DOJ officials. The amended complaint alleges a claim under the APA, 5 U.S.C. § 702, challenging as arbitrary, capricious, and contrary to law OLC's purported failure to meets its disclosure obligations under FOIA's reading-room requirements, 5 U.S.C. § 552(a)(2). As its primary form of relief, CREW seeks an injunction directing OLC to disclose all documents subject to that provision. The injunction would

have four features: (1) it would apply prospectively, that is, to documents not yet created; (2) it would impose an affirmative obligation to disclose, that is, OLC would disclose documents regardless of whether someone specifically requests a given document; (3) it would mandate that OLC make documents available to the *public*, as opposed to just CREW; and (4) it would require OLC to make available to the public an index of all such documents.

DOJ moved to dismiss the amended complaint on multiple grounds, and on March 7, 2016, the district court granted that motion. As the court explained, because CREW challenges OLC's actions under the APA, "it must satisfy the APA's predicate requirements for bringing suit," namely, that "there is no other adequate remedy" available. *Citizens for Responsibility and Ethics in Washington v. DOJ*, 164 F. Supp. 3d 145, 151 (D.D.C. 2016); 5 U.S.C. § 704. The district court concluded that FOIA provides an adequate remedy, thus barring CREW's APA claim.

CREW now appeals. Our review is *de novo*.

## II.

FOIA imposes on federal agencies both reactive and affirmative obligations to make information available to the public. In the former category, the act's most familiar provision, section 552(a)(3) provides that agencies must "make . . . records promptly available" in response to specific requests. 5 U.S.C. § 552(a)(3)(A). In the latter category are two distinct affirmative disclosure obligations. One, section 552(a)(1), requires agencies to "publish in the Federal Register" certain records, such as "substantive rules of general applicability adopted as authorized by law." *Id.* §§ 552(a)(1), (a)(1)(d). The other, section 552(a)(2)—the reading-room provision at issue in this case—requires

agencies to "make [certain records] available for public inspection in an electronic format[,]" including "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." *Id.* §§ 552(a)(2), (a)(2)(B).

To breathe life into these obligations, FOIA provides for judicial review. Section 552(a)(4)(B) grants district courts jurisdiction to review "*de novo*" an agency's decision to withhold records and empowers courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). Our precedent makes clear that FOIA's "remedial provision . . . governs judicial review of all three types of documents"—that is, requests for information under sections 552(a)(1), (2), or (3). *Kennecott Utah Copper Corp. v. Department of Interior*, 88 F.3d 1191, 1202 (D.C. Cir. 1996). Equally certain under our case law, a plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3). *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) ("[T]he opinions and orders referred to in Section 552(a)(2), when properly requested, are required to be made available, and . . . such requirement is judicially enforceable without further identification under Section 552(a)(3), even though the agency has failed to make them available as required by Section 552(a)(2).").

Concerned that FOIA's remedial provision does not empower a district court to order all the relief necessary to force an agency to meet its reading-room obligations, CREW brought its claim under the APA. As noted above, however, APA section 704 limits review under that statute to agency

actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

The issue in this case—whether CREW can pursue this suit under the APA because FOIA does not provide an "adequate remedy"—is easy to state but difficult to resolve. Indeed, this is a case of first impression, as none of our section 704 cases concerns FOIA, nor do our FOIA cases address section 704. *See Kennecott*, 88 F.3d at 1203 (declining to address whether the APA authorizes a district court to order publication of a document for an alleged violation of FOIA section 552(a)(1)); *Tax Analysts v. IRS*, 117 F.3d 607, 610 n.4 (D.C. Cir. 1997) ("*Kennecott* left open the question whether other sources of law might authorize additional remedial orders in FOIA cases.").

Befitting this novel question, the parties' briefs are both excellent and interesting. Both CREW and the Government appear to narrowly construe FOIA's remedial provision as empowering a district court faced with a violation of the reading-room requirement to order only the disclosure to a plaintiff of extant documents in response to a specific request. But they have significantly different views of the consequences. According to CREW, this gap between the relief it seeks and the relief available under FOIA means that a claim under FOIA cannot qualify as an "adequate remedy" barring its APA claim. According to DOJ, however, because an alternative remedy need not be "identical" in order to be "adequate," CREW's APA claim fails even under a constricted view of the relief FOIA affords. In a helpful amicus brief, Public Citizen argues that both are wrong. It urges us to read FOIA's remedial provision broadly, as encompassing all the relief sought by CREW.

To resolve this issue, we begin by considering whether CREW may obtain the relief it wants under FOIA. For if it can, as Public Citizen thinks, then we need not explore what "adequate" means under the APA. But if, as CREW believes, FOIA does not provide the relief it seeks, then we must consider whether, as the Government insists, FOIA nonetheless offers an adequate remedy.

## III.

CREW seeks an injunction with four features it believes are necessary to guarantee OLC meets its reading-room obligations. First, the injunction would have prospective effect—*i.e.*, it would apply to opinions not yet written. Second, it would impose an affirmative obligation to disclose on OLC—*i.e.*, without need for a specific prior request. Third, it would mandate disclosure to the *public*, as opposed to just CREW. Fourth, it would require OLC to make available to the public an index detailing all documents subject to the reading-room provision.

We start with the proposition that FOIA section 552(a)(4)(B) vests courts with broad equitable authority. True, as the Supreme Court explained in *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974), that provision "explicitly confers jurisdiction to grant injunctive relief of a described type, namely, 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Id.* at 18 (citing 5 U.S.C. § 552(a)(4)(B)). But as the Court made clear in the same decision, Congress did not intend that language "to limit the inherent powers of an equity court" in FOIA cases. *Id.* at 20; *see Payne Enterprises v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms." (citing *Renegotiaton Board*, 415 U.S. at 19–20)).

"Once invoked, the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies." *Brown v. Plata*, 563 U.S. 493, 538 (2011) (citations and internal quotation marks omitted). This is especially so where, as here, "federal law is at issue and 'the public interest is involved,' [as] a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" *Kansas v. Nebraska*, 135 S. Ct. 1042, 1053 (2015) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).

This circuit's case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective injunctive relief. In *Payne*, we confronted the Air Force's repeated failure to disclose documents in response to a company's FOIA requests. 837 F.2d at 487. Frustrated by the need to pursue successive and "invariably successful" challenges every time it sought such documents, the company filed suit seeking an "injunct[ion] . . . to compel [the Air Force] to release" the documents. *Id.* at 487. We held that the company "ha[d] an undeniable right" to the sought-after "information . . . and [was] entitled to a judgment in support of its claim." *Id.* at 494. Accordingly, we instructed the district court to on remand "consider the propriety of injunctive relief." *Id.* at 495. "In particular," we directed the court to "evaluate the likelihood that the Air Force will return to its illicit practice of delay in the absence of an injunction." *Id.*

Our later decisions confirm that a plaintiff may challenge an agency's "policy or practice" where it "will impair the party's lawful access to information *in the future*." *Newport Aeronautical Sales v. Air Force*, 684 F.3d. 160, 164 (D.C. Cir. 2012) (quoting *Payne*, 837 F.2d at 491) (emphasis added). In other contexts, we have recognized courts' power to order

relief beyond the simple release of extant records. *See Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir. 2007) (acknowledging a district court's power to direct an agency to conduct additional searches for records in response to a FOIA request).

Following *Renegotiation Board*, *Payne*, and these other decisions, we have little trouble concluding that a district court possesses authority to grant the first two categories of relief CREW seeks—a prospective injunction with an affirmative duty to disclose. The third and fourth categories of relief present a trickier problem.

Although broad, courts' remedial authority under section 552(a)(4)(B) is not boundless. For instance, in *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), the Supreme Court held that "federal courts have no authority to order the production" of records no longer in an agency's possession "even if a document requested under the FOIA is wrongfully" in the hands of a third party. *Id.* at 139.

In *Kennecott*, we announced another limitation on FOIA remedial power of particular relevance to this case. There, the plaintiff filed an action under FOIA seeking an injunction requiring publication in the Federal Register, pursuant to section 552(a)(1), of regulations that had been withdrawn by the Interior Department. *Kennecott*, 88 F.3d at 1201. Rejecting this request, we held that section 552(a)(4)(B) "does not authorize district courts to order publication" of documents subject to the provisions of section 552(a)(1). *Id.* at 1202. Although acknowledging that "it might seem strange for Congress to command agencies to 'currently publish' or 'promptly publish' documents, without in the same statute providing courts with power to order publication," we nonetheless concluded "that is exactly what Congress

intended." *Id.* at 1202–03. Section 552(a)(4)(B), we said, "is aimed at relieving the injury suffered by the individual complainant, not by the general public" as "[i]t allows district courts to order 'the production of any agency records improperly withheld *from the complainant*,' not agency records withheld from the *public*." *Id.* at 1203 (citing 5 U.S.C. § 552(a)(4)(B)) (emphasis in original). Distinguishing between "[p]roviding documents to the individual" and "ordering publication[,]" we held that, under section 552(a)(4)(B), a district court is without authority to do the latter. *Id.*

Given *Kennecott's* construction of section 552(a)(4)(B), we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency "make available for public inspection" documents subject to the reading-room provision—the third category of relief CREW seeks. 5 U.S.C. § 552(a)(2). Authorizing a court to order an agency to make documents "available for public inspection" would reach beyond section 552(a)(4)(B)'s focus on "relieving the injury suffered by the individual complainant" to remedy an injury suffered by "the general public"—a result our precedent forecloses. *Id.* at 1203. That said, nothing in *Kennecott* prevents a district court from, consistent with section 552(a)(4)(B), ordering an agency to provide *to the plaintiff* documents covered by the reading-room provision.

The same analysis governs the fourth type of relief CREW seeks: an order mandating that OLC "maintain and make available for public inspection in an electronic format *current indexes* providing identifying information as to any matter . . . required by [section 552(a)(2)] to be made available or published." 5 U.S.C. § 552(a)(2) (emphasis added). For just as a district court lacks authority to order an agency to "make available for public inspection" documents

subject to the reading-room provision, it is without authority to mandate than an agency make such an index available to the public. 5 U.S.C. § 552(a)(2). We see no obstacle, however, to a district court, in the appropriate case, and as an extension of its broad equitable power to fashion FOIA relief, ordering an agency to furnish such an index *to a plaintiff.* Indeed, given that *Kissinger* described section 552(a)(2)'s indexing requirement as one of FOIA's "very limited *record*-creating obligations," *Kissinger*, 445 U.S. at 152 n.7 (emphasis added), directing an agency to turn over such an index falls comfortably within the textual bounds of section 552(a)(4)(B)'s grant of authority to "enjoin the agency from withholding agency *records* and to order the production of agency *records* improperly withheld from the complainant." 5 U.S.C. 552(a)(2) (emphasis added); *see American Immigration Lawyers Association v. Executive Office for Immigration Review*, 830 F.3d 667, 678 (D.C. Cir. 2016) (noting that FOIA itself "provides no definition of the term 'record.'").

Public Citizen resists these conclusions and urges us to read *Kennecott* narrowly, as leaving a court's authority to fashion a remedy for a violation of section 552(a)(2) unconstrained. It points out that *Kennecott* considered a violation of section 552(a)(1), not section 552(a)(2)'s reading-room requirement. But essential to *Kennecott*'s holding is its interpretation of the scope of section 552(a)(4)(B), FOIA's remedial provision, at issue here. Public Citizen also argues that *Kennecott* "focused on the second clause of [section] 552(a)(4)(B), allowing 'district courts to order the production of any agency records improperly withheld *from the complainant*,' and did not examine the scope of the court's authority under the first clause, which gives courts the power 'to enjoin the agency from withholding any records,' without any limitations." Amicus Br. 19. The *Kennecott* court,

however, did not so cabin its holding; rather it construed the scope of section 552(a)(4)(B) as a whole. *See e.g.*, 88 F.3d at 1203 ("We think it significant . . . that [section] 552(a)(4)(B) is aimed at relieving the injury suffered by the individual complainant, not by the general public."). Moreover, in arriving at its holding, the *Kennecott* court necessarily—albeit implicitly—rejected this argument, and we are bound "not only [by] the result" of a prior opinion "but also [by] those portions of the opinion necessary to that result." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996). And given that the parties in *Kennecott* raised the very textual argument advanced by Public Citizen, we are hardly free to avoid the otherwise binding nature of our precedent on the grounds that the question was one that "merely lurk[ed] in the record, neither brought to the attention of the court nor ruled upon," *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 n.7 (D.C. Cir. 1996) (en banc); *see* Joint Reply Br. Kennecott Utah Copper Corp. and Industry and Sanitation District Petitioners at 13, *Kennecott*, 88 F.3d 1191 (No. 93-1700).

To sum up, then, CREW may, in a FOIA suit to enforce section 552(a)(2), seek an injunction that would (1) apply prospectively, and would (2) impose an affirmative obligation to disclose upon OLC, but that would (3) require disclosure of documents and indices only to CREW, not disclosure to the public. Having concluded that FOIA makes available all the relief sought by CREW except disclosure to the public, we now consider whether FOIA constitutes an "adequate remedy" preclusive of CREW's APA claim despite this gap between the relief sought and the relief FOIA affords. 5 U.S.C. § 704.

**IV.**

Section 704 reflects Congress' judgment that "the general grant of review in the APA" ought not "duplicate existing procedures for review of agency action" or "provide

additional judicial remedies in situations where Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (citation omitted). Courts must, however, avoid lightly "constru[ing] [section 704] to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action." *Id*.

When considering whether an alternative remedy is "adequate" and therefore preclusive of APA review, we look for "clear and convincing evidence" of "legislative intent" to create a special, alternative remedy and thereby bar APA review. *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Center v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). Our cases have identified that intent—or its absence—through several means. For example, where Congress has provided "an independent cause of action or an alternative review procedure" in a purported alternative, we have found clear markers of legislative intent to preclude. *El Rio*, 396 F.3d at 1270. An alternative that provides for *de novo* district-court review of the challenged agency action offers further evidence of Congress' will, given the frequent "incompat[ibility]" between *de novo* review and the APA's deferential standards. *Environmental Defense Fund v. Reilly*, 909 F.2d 1497, 1506 (D.C. Cir. 1990); *El Rio*, 396 F.3d at 1270 ("[W]here a statute affords an opportunity for *de novo* district-court review, the court has held that APA review was precluded because 'Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA." (quoting *Environmental Defense Fund*, 909 F.2d at 1501 (alteration in original))). That said, if the very existence of an alternative remedy is "doubtful," *Bowen*, 487 U.S. at 905, or "uncertain[]," *El Rio*, 396 F.3d at 1274, there is scant basis to displace APA review.

Because section 704 requires only an *adequate* alternative, "this court has held that the alternative remedy need not provide relief *identical* to relief under the APA" in order to have preclusive effect. *Garcia*, 563 F.3d at 522 (emphasis added); *see El Rio,* 396 F.3d at 1272 (explaining that an alternative remedy need offer only relief of "the same genre" to "preclude APA review." (citation omitted)). Still, in determining whether alternative remedies suffice to preclude APA review, courts have "independently examined the[ir] adequacy." *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990). In *Bowen*, for instance, the Court rejected as inadequate and non-preclusive the alternative remedy of bringing a claim for "monetary relief . . . in the Claims Court under the Tucker Act." 487 U.S. at 904. "The Claims Court," the Supreme Court observed, "does not have the general equitable powers of a district court to grant prospective relief" and the Court was "not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief." *Id.* at 905. In *Garcia*, conversely, we affirmed the dismissal of an APA claim in part because the alternative remedy offered "declaratory and injunctive relief against the agency, in addition to money damages"—relief we deemed "[i]f anything" superior to that available under the APA. 563 F.3d at 525.

By these lights, we have little doubt that FOIA offers an "adequate remedy" within the meaning of section 704, as it exhibits all of the indicators we have found to signify Congressional intent. FOIA contains an express private right of action and provides that review in such cases shall be "*de novo*." 5 U.S.C. § 552(a)(4)(B). As opposed to the "uncertain" and "doubtful" remedies we have rejected as insufficient to preclude APA review, our precedent establishes that a plaintiff in CREW's position may bring a FOIA claim to

enforce the reading-room provision. *Irons*, 465 F.2d at 614. Indeed, in FOIA Congress established "a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment." *Kissinger*, 445 U.S. at 150. The creation of both agency obligations and a mechanism for judicial enforcement in the same legislation suggests that FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired. Considered together, FOIA offers CREW precisely the kind of "special and adequate review procedure[]" that Congress immunized from "duplic[ative]" APA review. *Bowen*, 487 U.S. at 903.

Moreover, as our earlier discussion of the relief available under section 552(a)(4)(B) makes plain, we see no yawning gap between the relief FOIA affords and the relief CREW seeks under the APA. Put another way, this case differs dramatically from *Bowen*, in which the Court rejected an alternative remedy that offered only monetary relief as an inadequate substitute for the "general equitable powers of a district court." 487 U.S. at 905. True, courts lack authority under FOIA to order agencies to "make [records] available for public inspection." 5 U.S.C. § 552(a)(2). Significantly for our purposes, however, CREW itself can gain access to all the records it seeks.

Thus, despite some mismatch between the relief sought and the relief available, FOIA offers an "adequate remedy" within the meaning of section 704 such that CREW's APA claim is barred. 5 U.S.C § 704.

## V.

Three parting thoughts.

First, given the many indicia of Congressional intent that counsel in favor of our conclusion today, no one should understand our decision as "assum[ing], categorically,"—*i.e.*, outside the FOIA context—that an alternative remedy will preclude APA relief even if that alternative circumscribes courts' authority to order appropriate injunctive relief. *See Bowen*, 487 U.S. at 905.

Second, our determination that FOIA is the proper vehicle for CREW's claim is entirely distinct from the question whether CREW is entitled to relief. That merits question—whether the reading-room provision commands disclosure of any OLC opinions—awaits a different day and a different case.

Finally, even if CREW prevails on the merits, our conclusion that certain relief is *available* under FOIA says nothing about its propriety in an individual case. Indeed, we expect that only a rare instance of agency delinquency in meeting its duties under the reading-room provision will warrant a prospective injunction with an affirmative duty to disclose subject records to a plaintiff. *See Payne*, 837 F.2d at 494–95.

For the foregoing reasons, we affirm the district court's dismissal of the case.

*So ordered.*