RANDOLPH, Senior Circuit Judge,
concurring in part and dissenting from part II.B.2:
The majority decides that the Republic of Hungary is immune from the jurisdiction of the federal courts in this case. I disagree.
Part II.B.2 of the majority’s opinion transforms the governing jurisdictional statute to mean the opposite of what it says. That distortion of the English language is not all. The majority also dismisses a controlling panel decision thoroughly inconsistent with the majority’s conclusion that there is no jurisdiction over the Republic of Hungary. Instead of following that decision, the majority credits a later, contradictory panel decision, a decision bereft of any statutory analysis.
The two decisions dealing with the jurisdictional question presented here are Agudas Chasidei Chabad of United States v. Russian Federation, 528 F.3d 934 (D.C. Cir. 2008), and the later decision in Simon v. Republic of Hungary, 812 F.3d 127 (D.C. Cir. 2016). Chabad and Simon cannot be reconciled, at “first glance” and every later glance. Maj. Op. 1105. Both were expropriation cases in which jurisdiction over the foreign state rested on the commercial activities of the foreign state’s agencies and instrumentalities in the United States. Chabad upheld jurisdiction over the foreign state. Simon decided the opposite, apparently unaware of the intra-cir-cuit conflict it was thereby creating. (After Simon came down the district court noticed the obvious intra-circuit conflict Simon caused. See Philipp v. Fed. Republic of Germany, No. 15-266 (CKK), — F.3d —, —, 2017 WL 1207408, at *9 (D.D.C. March 31, 2017).)
As between Chabad and Simon, the earlier Chabad decision controls for the reasons Judge Sentelle stated for our court in Sierra Club v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011). Under Chabad, the district court in this case therefore had jurisdiction over the Republic of Hungary. I will have more to say about Chabad and Simon in a moment. But it will be useful to examine first the majority’s efforts to fill in a rationale for the result in Simon, a rationale missing from the Simon opinion itself.
The expropriation or “takings” exception in the Foreign Sovereign Immunities Act, *1111 28 U.S.C. § 1605(a)(3), states as follows, with my italics added:
[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... (3) in which rights in property taken in violation of international law are in issue and that property ... is owned or operated by an agency or instrumentality of the foreign state ... engaged in a commercial activity in the United States.
See Bolivarian Republic of Venezuela v. Helmerich & Payne Int’l Drilling Co., — U.S. —, 137 S.Ct. 1312, 1316, 197 L.Ed.2d 663 (2017), quoting the same portion of the statute in a case dealing with jurisdiction over a foreign state.
Hungary’s immunity thus should have depended on three easily-answered questions. Is the Republic of Hungary a “foreign state”? Of course it is. See Maj. Op. 1104. Are “rights in property taken in violation of international law” “in issue”? The answer is clearly yes. See Maj. Op. 1103. And is “that property” “owned or operated by an agency or instrumentality of the foreign state ... engaged in a commercial activity in the United States”? Once again — yes. See Maj. Op. 1104.
Yet the majority decides that Hungary is immune from suit. The apparent basis for its conclusion is that the italicized portion of § 1605(a)(3), quoted above, does not divest a “foreign state” of immunity. Although § 1605(a)(3) provides that a foreign state shall not be immune from suit, the majority crosses out the “not” and holds that the foreign state shall be immune when its agencies or instrumentalities owning or operating the expropriated property engage in commercial activity in the United States.
In trying to explain why § 1605(a)(3) should be treated as if it means the opposite of what it actually provides, the majority invokes § 1606 and § 1610 of the Act, sections that differentiate foreign states from their agencies and instrumentalities. See Maj. Op. 1107 (citing 28 U.S.C. §§ 1606 & 1610). One of these sections (§ 1606) exempts foreign states, “except for an agency or instrumentality thereof,” from liability for punitive damages. The other section (§ 1610) sets forth procedures for attaching the property of a foreign state, procedures that differ from those for attaching the property of a foreign state’s agency or instrumentality. Both sections deal with remedies, not a foreign state’s immunity from suit.
Neither section suggests that Hungary is not a foreign state. The Act defines “foreign state” to include the foreign state’s agencies and instrumentalities. 28 U.S.C. § 1603(a). The sections the majority cites are arguably exceptions to that definition. It is one thing to say that a “foreign state” under the Act does not always include agencies and instrumentalities. Those sections may stand for that proposition. But the majority advances an entirely different proposition — namely, that the term “foreign state” in § 1605(a)(3) somehow does not include a “foreign state.”
To support this non sequitur, the majority enlists Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 446 (D.C. Cir. 1990). The case has no logical connection to the issue at hand. On the page the majority cites, the Foremost-McKesson court was not interpreting “foreign state,” or any statutory text for that matter. Instead, the court was addressing an antecedent issue to the immunity exceptions. Specifically, the issue was whether “the government of Iran exercised the necessary degree of control over the other [instrumentality] defendants to create a principal/agent relationship and thus permit this court to deem Iran responsible for their actions.” Id. at 445 (citation omitted). *1112 No one argues here that Hungary is being called to answer for the wrongs of its instrumentalities; all agree that this case involves a “family’s decades-long effort to recover a valuable art collection that the World-War-II-era Hungarian government and its Nazi collaborators seized during their wholesale plunder of Jewish property during the Holocaust.” Maj. Op. 1097. Foremost-McKesson thus offers no support to the majority’s view of § 1605(a)(3). The distinction between foreign states and their instrumentalities simply does not matter on the question whether Hungary is a foreign state.[1]
The Supreme Court, in its latest opinion on the Foreign Sovereign Immunities Act, cited the Restatement (Fourth) of Foreign Relations Law: Sovereign Immunity § 455 (Tent. Draft No. 2, March 21, 2016). See Helmerich & Payne Int’l Drilling, 137 S.Ct. at 1321. As one would expect, the Restatement provides a clear articulation of the expropriation exception to a foreign state’s immunity. Section 455 states:
Courts in the United States may exercise jurisdiction over a foreign state in any case in which rights in property taken in violation of international law are in issue when
(a) that property (or any property exchanged for such property) is present in the United States in connection with a commercial activity carried on by that foreign state in the United States; or
(b) that property (or any property exchanged for such property) is owned or operated by an agency or instrumentality of a foreign state and that agency or instrumentality is engaged in commercial activity in the United States.
Reporter Note 6 then addresses the issue in this case directly. “Some courts,” the Note says, “have allowed actions under the second ‘prong’ of this exception to be brought against the foreign state in question rather than the agency or instrumentality. See, e.g., Agudas Chasidei Chabad of U.S. v. Russian Federation, 528 F.3d 934 (D.C. Cir. 2008); Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (9th Cir. 1992); de Csepel v. Republic of Hungary, 808 F.Supp.2d 113 (D.D.C. 2011), aff'd on other grounds, 714 F.3d 591 (D.C. Cir. 2013).”[2]
Notice that the Reporter cites Chabad as a case in which the court decided that the italicized language from § 1605(a)(3), *1113 set forth above, conferred jurisdiction over the foreign state itself. Yet the majority denies that Chabad so ruled and on that basis concludes that the later-issued opinion in Simon, contrary to Chabad, controls. The majority is mistaken. The briefs of the parties discussed the italicized portion of § 1605(a)(3) at some length for the quite apparent reason that the plaintiffs relied on that portion of the statute to strip Russia of its immunity. See Opening Brief for Chabad at 48, Chabad, 528 F.3d 934.
As I briefly discussed in the beginning of this dissent, the majority’s failure to follow Chabad is clear error. Consider the majority’s statement that in Chabad the “issue of the Russian state’s immunity was completely unaddressed by the district court and neither raised nor briefed on appeal....” Maj. Op. 1105. There are two assertions here. The first deals with the district court’s opinion, the second with what the parties argued on appeal. Both are wrong.
As to the majority’s first assertion, District Judge Lamberth’s comprehensive opinion in Chabad refutes it. On page after page Judge Lamberth discusses and ultimately agrees with Chabad’s claim that jurisdiction over Russia — that is, Russia’s lack of immunity — required that “the entity that owns or operates the property at issue ‘be engaged in a commercial activity in the United States.’ § 1605(a)(3) (emphasis added).” 466 F.Supp.2d 6, 24 (D.D.C. 2006). Judge Lamberth’s opinion then begins an extended analysis of the clause in § 1605(a)(3) I have italicized above. Id. at 24-25. The majority here also fails to notice that there were two separate alleged expropriations in Chabad, one dealing with what the parties called the “Archive,” the other dealing with the “Library.” Maj. Op. 1105-06, .1106. Judge Lamberth determined that Russia had no immunity regarding the “Archive” expropriation, but had immunity regarding the “Library” expropriation. 466 F.Supp.2d at 31. Both sides appealed. Chabad, 528 F.3d at 939.
On appeal, Russia argued in its brief that “commercial activity” in the italicized clause in § 1605(a)(3) — which Chabad had relied upon (466 F.Supp.2d at 23-24)— should be interpreted to require “substantial contact” with the United States. See Opening Brief for Russia at 41-42, Chabad, 528 F.3d 934. Otherwise, Russia argued, there would be an anomaly: plaintiffs could more easily establish jurisdiction over a foreign state based on the commercial activity of its agencies and instrumentalities than based on the activity of the foreign state itself. Id. The Chabad plaintiffs countered that the “plain language” of the § 1605(a)(3) clause italicized above conferred jurisdiction over the foreign state without any substantiality requirement and that if this should be altered, it was up to Congress not the courts. Opening Brief for Chabad at 50-51, Chabad, 528 F.3d 934. On appeal, our court acknowledged Russia’s “anomaly” argument regarding the italicized clause in § 1605(a)(3), 528 F.3d at 947, and expressly rejected it. Id.
Yet the majority in this case now resurrects Russia’s argument and claims that treating the italicized clause in § 1605(a)(3) as establishing jurisdiction over Hungary would produce an “anomalous result.” Maj. Op. 1107-08. The majority seems quite unaware that the “anomaly” argument it puts forward is the argument the Chabad court flatly rejected on appeal. The briefs in Chabad make the majority’s error clear.
The short of the matter is that the appellate decision in Chabad is controlling. The Supreme Court has instructed that “it is not only the result but also those portions of the opinion necessary to that result by which we are bound.” Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), *1114 quoted in Citizens for Responsibility & Ethics in Washington v. United States Dep’t of Justice, 846 F.3d 1235, 1244 (D.C. Cir. 2017). The result in Chabad was clear: the court affirmed the district court’s judgment upholding jurisdiction over Russia with regard to the “Archive” claim and reversed the district court’s judgment granting Russia immunity on the “Library” claim. Chabad, 528 F.3d at 948, 955; see Agudas Chasidei Chabad of U.S. v. Russian Fed’n, 729 F.Supp.2d 141, 143, 148 (D.D.C. 2010) (exercising jurisdiction over Russia on remand). Both jurisdictional decisions rested on the italicized portion of § 1605(a)(3) that the plaintiffs in this case clearly satisfied. See Maj. Op. 1105. When, in the Supreme Court’s words in Seminole Tribe, one looks to the “portions of the opinion necessary to that result,” one finds ample reasoning in support over multiple pages. See Chabad, 528 F.3d at 946-48. Chabad examined whether Russia’s agencies and instrumentalities were “engaged in a commercial activity in the United States” and found this “alternative” clause in § 1605(a)(3) “plainly satisfied.” 28 U.S.C. § 1605(a)(3); Chabad, 528 F.3d at 948. On that basis, it determined that Russia did not have immunity from the jurisdiction of the federal courts. Chabad, 528 F.3d at 955.
The majority dismisses the reasoning of Chabad because it believes that a “foreign state” in § 1605(a)(3) may sometimes not be a “foreign state.” Having adopted this unfounded reading of the statute, the majority then faults Chabad for not explicitly addressing it. It bears repeating that Cha-bad upheld jurisdiction over Russia. Why? Because the italicized portion of § 1605(a)(3) removed Russia’s immunity in light of the commercial activities of Russia’s agencies and instrumentalities in the United States. The Chabad decision is clearly precedential, whether or not the opinion responded to every conceivable misreading of the statute.
In the later decision in Simon, the panel recognized that the relevant portion of Chabad had precedential effect. Without explanation, it cited that precise portion in reaching its contrary and counter-textual interpretation of the expropriation exception. See Simon, 812 F.3d at 146 (citing Chabad, 528 F.3d at 947). Chabad was the only case it cited for that result. Id. The Simon panel’s one-sentence rehearing denial added nothing.
The only reasonable explanation for Simon’s treatment of Chabad is that it made a mistake. The majority’s decision in this case only compounds the error.

. Because the majority relies on this distinction, it is worth making one additional point. The majority concludes that a "foreign state loses its immunity if the claim against it satisfies the exception by way of the first clause of the commercial-activity nexus requirement; by contrast, an agency or instrumentality loses its immunity if the claim against it satisfies the exception by way of the second clause.” Maj. Op. 1107. This supposed neat distinction between foreign states and their instrumental-ities is belied not only by the Act defining “foreign state” to include agencies and instru-mentalities, 28 U.S.C. § 1603(a), but also by the House Report on the Act explicitly adopting this definition for the expropriation exception. See H.R. Rep. No. 94-1487, pp. 18, 19 (1976). This definition of "foreign state” also dispels the majority’s notion that reading the statute for what it says would result in the court having “no jurisdiction over the agencies and instrumentalities that actually own or operate the expropriated property.” Maj. Op. 1107. That argument only works if "foreign state” means either the foreign state or its instrumentalities — but the term includes both.

. The Restatement and majority both note a contrary decision in the Second Circuit. See Garb v. Poland, 440 F.3d 579, 589 (2d Cir. 2006); Maj. Op. 1108. Courts in the Second Circuit have concluded that the relevant language in Garb was dicta. See Freund v. Republic of France, 592 F.Supp.2d 540, 561 n.10 (S.D.N.Y. 2008). See also Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 205-06 (2d Cir. 2016).